**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br><br>         *Plaintiffs,* <br>   v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States, et al.,* <br><br>         *Defendants.* | Case No. 1:26-cv-11581-IT |

**PLAINTIFF STATES' OPPOSITION TO**
**DEFENDANTS' MOTION TO TRANSFER**

**INTRODUCTION**

Executive Order No. 14,399, *Ensuring Citizenship Verification and Integrity in Federal Elections* (EO), attempts to impose unlawful changes to the mechanics of elections administration across the Nation, including elections in the Plaintiff States. The EO orders the Secretary of Homeland Security to create a "State Citizenship List" of purportedly eligible voters in each state based on various federal data sources. EO § 2(a). It directs USPS to adopt regulations resulting in USPS's own mail-in voter roll—and further directs USPS not to transmit election mail from voters who do not appear on that roll. *Id.* § 3(b). The EO also seeks to strongarm States into adhering to the President's incorrect interpretation of federal laws, and to force States to abandon their own laws to follow the extra-jurisdictional, non-statutory scheme that the President manufactured. *Id.* §§ 2(b), 5. None of the EO provisions that Plaintiff States has challenged is legal. The President cannot push through his damaging policy preferences by decree.

To prevent the EO's invasion of Plaintiff States' sovereign interest in administering elections, Plaintiff States filed this action on April 3, 2026. Less than 48 hours earlier, three lawsuits challenging the EO were filed and later consolidated in the United States District Court for the District of Columbia (D.D.C. Cases), Defs.' Mem. of Law in Supp. of Defs.' Mot. to Transfer (Mot. Mem.), Doc. No. 56 at 7, and one other case was filed in this Court, *League of Women Voters of Massachusetts v. Trump*, No. 26-cv-11549-IT (D. Mass. filed Apr. 2, 2026). Defendants now seek to transfer this action to the District of Columbia based on the "first-to-file" rule (also called the "first-filed rule").

Transfer is inappropriate because the first-to-file rule does not apply here, and even if it did, Defendants have not carried their burden to show that this Court should exercise its discretion to transfer. No party can seriously dispute that the plaintiffs in this action—the sovereign Plaintiff States—are distinct from the plaintiffs in the earlier-filed cases and have unique interests, as well as unique legal protections, for example, against the commandeering of their officials by an unlawful executive order. Indeed, unlike the plaintiffs in the D.D.C. cases,

1

Plaintiff States have a duty under the U.S. Constitution to administer federal elections and an obligation under their respective state constitutions to ensure that eligible voters who wish to cast a vote are able to do so. And only the States are charged, upon threat of prosecution by the Attorney General, with complying and carrying out the actions the President seeks to force through the EO. Given the differences in parties and legal issues and the strong presumption in favor of the plaintiff's choice of forum, transfer would be improper.

## BACKGROUND

### I.    THIS LITIGATION

Plaintiff States challenge three provisions of the EO. *See* Am. Compl. (Compl.), Doc. No. 65, ¶¶ 119–131. The three challenged provisions have direct and profound consequences for Plaintiff States.

1.    Section 2(a) directs the Secretary of Homeland Security, along with the Social Security Administration (SSA) Commissioner, to develop "a list of individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State," deemed the "State Citizenship List." EO § 2(a). The State Citizenship List is to be compiled from "citizenship and naturalization records, SSA records, SAVE data, and other relevant Federal databases," and it must be sent to States' chief elections officials "no fewer than 60 days before each regularly scheduled Federal election, or promptly upon request by a State in connection with any special Federal election." *Id.* Section 2 also threatens prosecution. Under Section 2, "State and local officials or any others involved in the administration of Federal elections who issue Federal ballots" to voters not on the federal State Citizenship List risk criminal prosecution simply for doing their jobs in compliance with state and federal statutes. *Id.* § 2(b).

2.    Section 3 attempts to interpose USPS into States' administration of mail voting. It directs that "no fewer than 90 days prior to a Federal election, any State may choose to notify the USPS if it intends to allow for mail-in or absentee ballots to be transmitted by the USPS" and whether it intends to submit "a list of voters eligible to vote" by mail in a Federal election. EO

§ 3(b)(ii). USPS must also "provide each State with a list of individuals . . . who are enrolled with the USPS . . . for mail-in or absentee ballots provided by such State," deemed the "Mail-In and Absentee Participation List." *Id.* § 3(b)(iv). Section 3 prohibits USPS from transmitting a complete mail ballot from any voter not included on that list. *Id.* § 3(b)(iii). Section 3 pairs the USPS voter lists with threats of criminal prosecution for States, their elections officials, and voters. *Id.* § 3(a); *see also id.* §§ 3(c), 5. It also requires USPS to adopt regulations that govern numerous, specific aspects of mail ballots such as specific markings and tracking technology. EO § 3(b)(i)(A)–(C).

       3.     Section 5 threatens States and localities with federal funding cuts for any "noncompliance with Federal law" and reiterates threats of investigations and criminal prosecutions for State and local entities and elections officials. EO § 5. And with no citation to any statutory basis, the EO demands that States "preserve, for a 5-year period, all records and materials—excluding ballots cast—evidencing voter participation in any Federal election (e.g., ballot envelopes, regardless of carrier)."

       Plaintiff States challenge these provisions because they are ultra vires and in violation of the separation of powers. Compl., Doc. No. 65, ¶¶ 150–189.

## II.    THE D.D.C. CASES

       No Plaintiff State, or indeed any State or local government or administrator of elections, is a party to the D.D.C. Cases. In *DSCC v. Trump*, No. 26-cv-1114 (D.D.C. filed Apr. 1, 2026), political organizations and politicians challenge EO Sections 2(a), 3(b), 4(a), and 4(c). Mot. Mem., Doc. No. 56 at 7. In *League of United Latin American Citizens v. Executive Office of the President*, No. 26-cv-1132 (D.D.C. filed Apr. 2, 2026), civic organizations challenge EO Sections 2(a), 3(b)(iii) and 3(b)(iv). Mot. Mem., Doc. No. 56 at 7. And in *NAACP v. Trump*, No. 26-cv-1151 (D.D.C. filed Apr. 3, 2026), different civic organizations challenge EO Sections 2(a), 3(b), 4(a), and 4(c).

       Plaintiff States and the private party plaintiffs in the D.D.C. Cases are differently situated. In particular, because no plaintiff in the D.D.C. Cases is a State, those private party plaintiffs will

assert different standing arguments that are not the same as Plaintiff States'.  In addition, none of the complaints in the D.D.C. Cases challenges the same set of EO Sections as Plaintiff States' complaint here.

## LEGAL STANDARD

The decision whether to transfer venue is committed to the sound discretion of the district court.  *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).  "Not only does the burden of proof rest with the party seeking transfer; there is a 'strong presumption in favor of the plaintiff's choice of forum.'" *Astro-Med, Inc. v. Nihon Kihoden Am., Inc.*, 591 F.3d 1, 13 (1st Cir. 2009) (quoting *Coady*, 223 F.3d at 11).  The first-to-file rule creates a presumption in favor of the forum of the first-filed action "where *identical* actions are proceeding concurrently in two federal courts." *Coady*, 223 F.3d at 11 (quoting *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)) (emphasis added).  Moreover, "[t]he first-to-file rule is not to be applied in a 'mechanical way[,]'" and courts have discretion to give preference to a later-filed action when the action will better serve the interests involved." *Thakkar v. United States*, 389 F. Supp. 3d 160, 170 (D. Mass. 2019) (internal citations and quotation marks omitted).  "'[F]airness considerations and equitable concerns could bar the application of the rule,' as can 'demonstrations of prejudice.'" *Id.* (alteration in original).  "When deciding whether to apply the [first-to-file] rule, courts must consider: (1) which action was filed first; (2) the similarity of the parties; and (3) the similarity of the issues." *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 350 (D. Mass. 2019).

Moreover, the first-filed rule yields when "the balance of convenience substantially favors the second-filed action." *Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 347 (D. Mass. 2005).  To determine the balance of convenience, courts consider "(1) the relative convenience of the parties; (2) the convenience of the witnesses and location of documents; (3) any connection between the forum and the issues; (4) the law to be applied; and (5) the state or public interest at stake." *Id.* at 351.

**ARGUMENT**

There is no dispute that venue is proper in the District of Massachusetts:  this is a "civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity"; the Commonwealth of Massachusetts is a plaintiff; "a substantial part of the events or omissions giving rise to the claim[s] occurred" and continue to occur in the District of Massachusetts; and no real property is involved in this action.  *See* 28 U.S.C. §§ 1391(b)(2), (e)(1).  Nevertheless, Defendants seek to transfer this case to the District of Columbia pursuant to first-to-file rule.  For the reasons explained below, transfer would be improper.

## I.   THE FIRST-TO-FILE RULE DOES NOT APPLY

### A.   The Parties Are Too Different to Apply the First-to-File Rule

Defendants' motion concentrates on the similarities between the defendants in the D.D.C. cases and the Defendants here.  Mot. Mem., Doc. No. 56 at 11.  Defendants' arguments miss the mark.  Notably, Plaintiffs in this action are markedly different, specifically 22 States, the District of Columbia, and the Governor of Pennsylvania acting in his official capacity.

Defendants try to downplay the differences in *plaintiffs* among the cases, but those differences doom Defendants' reliance on the first-to-file rule.  "[T]he first-filed rule does not apply where plaintiffs are not the same parties."  *Davis v. Office Depot, Inc.*, Nos. 16-cv-11783, 16-cv-11823, 2016 WL 7007485, at *4 (D. Mass. Nov. 28, 2016) (Talwani, J.) (citing *Cianbro*, 814 F.2d at 11).  Defendants concede (as they must) that "Plaintiffs in the D. Mass. Cases and D.D.C. Consolidated Cases do not overlap."  Mot. Mem., Doc. No. 56 at 12 (emphasis omitted). Thus, the plaintiffs are not the same parties and the first-to-file rule is inapplicable.  That can, and should, end the inquiry.  *See Davis*, 2016 WL 7007485, at *4; *see also California v. Trump*, Case No. 25-cv-10810-DJC, Dkt. 79 Electronic Order (D. Mass. May 9, 2025) (Casper, C.J.) (denying federal defendants' motion to transfer multi-state case challenging the President's first executive order on election, finding "the parties are not the same—while the Plaintiffs before this Court are States, the DC Cases were brought by private parties"); *Arizona v. U.S. EPA*, No. 2:25-

5

CV-02015-TMC, 2026 WL 44828, at *4 (W.D. Wash. Jan. 7, 2026) (denying federal defendants' motion to transfer multi-state case to D.D.C. in part because "there is no overlap between the plaintiffs").

Even if this Court departed from that principle and used the "substantial similarity" test, the first-filed rule would still not apply. To be sufficiently similar under this test, parties must "represent the same interests." *Barapind v. Reno*, 72 F. Supp. 2d 1132, 1145 (E.D. Cal. 1999). Here, the parties do not represent the same interests. Plaintiffs in this case are the sovereign States. As sovereigns, they have unique interests in "creat[ing] and enforc[ing] a legal code." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). Plaintiffs also have a "quasi-sovereign interest in not being discriminatorily denied [their] rightful status within the federal system." *Id.* at 607. In the election context, States have unique interests in "regulating the election process and avoiding voter confusion," *Libertarian Party of Fla. v. Florida*, 710 F.2d 790, 792–93 (11th Cir. 1983); maintaining fairness, honesty, and order in elections, *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); and "avoiding confusion, deception, and even frustration of the democratic process[,]" *Jenness v. Fortson*, 403 U.S. 431, 442 (1970). This means that the Plaintiff States are harmed differently by the EO, which attempts to interfere with their sovereign interests and upend (at high cost) their administration of upcoming federal primary and general elections. Compl., Doc. No. 65, ¶¶ 137–49.

The plaintiffs in the D.D.C. Cases lack those same interests. They are a mix of civil organizations, political organizations, and two individual elected officials, Mot. Mem., Doc. No. 56 at 8–9, whose interests, while weighty, are different in kind from the States' interests identified above. For that reason, the cases are not substantially similar for the first-to-file rule.

Defendants do not even try to grapple with Plaintiff States' unique interest. Instead, they focus on which defendants have been sued. *See* Mot. Mem., Doc. No. 56 at 11–12. That is not the test, and under the correct standard, Defendants' argument fails.

6

**B.      The Issues Involved Are Too Different to Apply the First-to-File Rule**

Defendants contend that the cases are similar because the cases "concern the constitutionality and validity of [the EO]." Mot. Mem., Doc. No. 56 at 12. However, Defendants admit that the first-filed action does not address five sections/subsections of the EO that Plaintiffs challenge in this action. *Id.* at 9 ("At first glance, there appear to be some gaps in the overlap in challenges to sections 2(b), 3(a), 3(c), 3(d), and 5 of the EO (challenged in the *California* Case but not the *DSCC* Case.").

Defendants' admission is fatal. "In order to determine if the issues are substantially similar, courts compare the relief sought in plaintiff's complaint and the relief sought in the [second] action." *Thakkar*, 389 F. Supp. 3d at 173–74. "Courts also examine whether the plaintiff's case and the [second] action turn on similar determinations of fact and seek to resolve similar legal issues." *Id.* at 174. Because the purported first-filed action omits five challenged sections/subsections of the EO that this action challenges, both actions turn on different determinations of law and fact. The differences in issues is a second reason—independent from the differences in parties—to find that the first-filed rule does not apply here. *See California*, Dkt. 79 Electronic Order (denying transfer motion in part because "[t]he matters also challenge different sections of the Executive Order").

In addition, as sovereigns, the Plaintiff States have unique arguments available to them in their challenge to the EO that are not equally available to the D.D.C. plaintiffs. For example, the States are expressly given the authority by article I, section 4 of the U.S. Constitution to administer elections, and indeed must do so under their own state constitutions, *see, e.g.*, Compl., Doc. No. 65, ¶¶ 57–77. The EO purports, instead, to commandeer Plaintiff State resources and personnel by demanding, under threat of prosecution, that Plaintiff States comply with the EO rather than their own state laws. The Plaintiff States uniquely are bound by their *own* legal obligations in the administration of elections, and are thus uniquely situated to advance anti-commandeering arguments.

7

## II.   EVEN IF THE FIRST-TO-FILE RULE APPLIES, THE BALANCE OF CONVENIENCE FACTORS DISFAVOR TRANSFER

Even if the first-filed rule applies, courts decline to transfer when the balance of convenience factors weigh in favor of the plaintiff's choice of forum. *See supra* pp. 4 (Legal Standard); *see also Codex Corp. v. Milgo Elec. Corp.* 553 F.2d 735, 739 (1st Cir. 1977) (noting that while "[t]he pendency of related litigation is a proper factor to consider in resolving venue questions," and "may have been decisive in a number of cases where the convenience factors were inconclusive . . . we have found no case where it has carried the day against factors pointing in the other direction"). The burden "rests with the party seeking transfer" and "there is a strong presumption in favor of the plaintiff's choice of forum." *Transcanada Power*, 402 F. Supp. 2d at 351 (quoting *Coady*, 223 F.3d at 11). The strong presumption in favor of the plaintiff's choice of forum "is given even more weight when"—as here—"[the] plaintiff selects its home forum." *Actifio, Inc. v. Delphix Corp.*, No. 14-13247-DJC, 2015 WL 1243164, at *6 (D. Mass. Mar. 17, 2015).

Defendants' motion fails to take on the balance of convenience factors. The closest it comes is arguing that "[p]rinciples of efficiency" support transfer because there may be "duplicative filings" without transfer. Mot. Mem., Doc. No. 56 at 10. But in this case's circumstances, there is virtually no efficiency or convenience to be gained by transfer.

Transfer would not be more convenient for the parties or the witnesses. Rather, transfer while summary judgment briefing is ongoing would be significantly detrimental to Plaintiff States. The Parties have already agreed to a briefing schedule in this Court, and this Court has already set a hearing date shortly after the close of briefing. As Plaintiff States have explained, they have an urgent need for timely relief as the EO "has profound consequences for Plaintiff States' administration of . . . election procedures, with impacts that will sharpen as preparations for the November 2026 elections, which already are underway, intensify." Jt. Mot. Dispositive Mot. Briefing Schedule ("Joint Mot.") (Apr. 13, 2026), Doc. No. 37 at 2–3. Plaintiff States are on the eve of filing their dispositive motion in the case based on the governing law of this Circuit. Transferring the case out of circuit would constitute serious prejudice at this stage.

8

There is no efficiency to be gained by transferring because the parties will need to brief the unique legal issues presented by Plaintiff States either way.  And Defendants have failed to show that transfer would be more convenient for witnesses because they have failed to "specify the witnesses to be called" or "make a general statement of what their testimony will entail."  *EEOC v. Tex. Roadhouse, Inc.*, No. 1:11-cv-11732-DJC, 2012 WL 5894910, at *2 (D. Mass. Nov. 9, 2012) (cleaned up).  Indeed, such a showing would be impossible because Defendants have agreed that dispositive motions can be briefed immediately and have "waive[d] discovery."  Jt. Mot., Doc. No. 37 at 3–4.  If anything, this factor weighs strongly in Plaintiff States' favor.  The District of Massachusetts is not just convenient for the Commonwealth of Massachusetts, but several other neighboring states as well.

As to the other factors, the strong connection between the EO's interference with Massachusetts's constitutional authority and this forum weighs against transfer.  The EO, if not enjoined, would have direct and significant effects on Massachusetts and its laws.  It is an attempt to determine who in Massachusetts may vote, in violation of Massachusetts's sovereign right to determine the eligibility of voters.  Compl., Doc. No. 65, ¶¶ 57–61.  The EO may also disenfranchise Massachusetts mail voters who are erroneously omitted from a USPS-controlled list.  *See* EO § 3(b).  And it threatens Massachusetts election officials with criminal prosecution if they follow Massachusetts law and federal statutes instead of the EO.  *Id.* §§ 2(b), 3(a), 5.  This Court has greater familiarity with Massachusetts law, including its laws on voter eligibility and registration and mail voting.  *See Stanley v. Am. Econ. Ins. Co.*, No. 24-cv-10622-DJC, 2025 WL 509498, at *4 (D. Mass. Feb. 14, 2025) (explaining that district court can weigh "the familiarity of the court with applicable laws").

Massachusetts also has a strong state interest in protecting its sovereign authority in its home forum.  If the EO were allowed to stand, Massachusetts would have to revamp its election administration to comply with the EO's directives.  And Massachusetts's elections officials and voters would be subject to arrest and criminal prosecution if the EO remains in force and Massachusetts fails—in Defendants' judgment—to adequately follow it.

Defendants identify no countervailing interest that could overcome both the presumption in favor of Massachusetts's choice and the balance of convenience factors. This litigation and the D.D.C. Cases do not include any overlap in the plaintiffs. Further, Plaintiff States also have distinct interests from the private party plaintiffs because of their unique role in administering elections. *See supra* Argument Part I.A. These distinct interests give rise to distinct types of harm. Similarly, while there is some overlap in claims, there will be limited efficiency gains from transfer because of the different legal questions presented in each case. For example, Plaintiff States will present different bases for standing and different constitutional claims than the plaintiffs in the D.D.C. Cases. As mentioned above, the sections of the EO challenged differ across the cases—notably, the D.D.C. cases do not challenge EO Sections 2(b), 3(a), 3(c), 3(d), and 5. Finally, the ripeness analysis for Plaintiff States' claim differs from the D.D.C. cases because Plaintiff States are elections administrators who will face direct enforcement threats and necessary tasks under the EO.

Defendants do cite the interest of comity. Mot. Memo., Doc. No. 56 at 14–15 (citing *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988). But they point to no authority holding that comity requires transferring a later-filed case that involves different parties bringing different legal challenges. *See Univ. of Penn.*, 850 F.2d at 971 (explaining that in the Third Circuit the first-filed rule "gives a court the power to enjoin the subsequent prosecution of proceedings involving *the same parties* and *the same issues* already before another district court" (emphasis added) (quotation marks omitted)). Defendants also decry bad-faith claims-splitting strategies, but they do not (and could not) allege that Plaintiff States undertook any such strategy here. *See* Mot. Mem., Doc. No. 56 at 15.

Accordingly, *even if* the first-filed rule applied, Defendants have failed to carry their burden of showing that the balance of convenience factors support transfer.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion.

Dated: April 22, 2026                          Respectfully submitted.

**ROB BONTA**                                  **ANDREA JOY CAMPBELL**
Attorney General of California                 Attorney General of Massachusetts

By: */s/ Michael S. Cohen*                     By: */s/ Vanessa A. Arslanian*
Michael S. Cohen*                              M. Patrick Moore (BBO No. 670323)
    *Deputy Attorney General*                      *First Assistant Attorney General*
Thomas S. Patterson*                           Vanessa A. Arslanian (BBO No. 688099)
    *Senior Assistant Attorney General*            *State Trial Counsel*
Seth E. Goldstein*                             Jared B. Cohen (BBO No. 689217)
    *Supervising Deputy Attorney General*      Jak Kundl (BBO No. 713951)
Anne P. Bellows*                                   *Assistant Attorneys General*
Kevin L. Quade*                                One Ashburton Place
Malcolm A. Brudigam*                           Boston, MA 02108
Robert William Setrakian*                      (617) 963-2107
    *Deputy Attorneys General*                 Vanessa.Arslanian@mass.gov
1300 I Street, P.O. Box 944255                 Pat.Moore@mass.gov
Sacramento, CA 95814                           Jared.B.Cohen@mass.gov
(916) 210-6090                                 Jak.Kundl@mass.gov
Michael.Cohen@doj.ca.gov
Seth.Goldstein@doj.ca.gov
Anne.Bellows@doj.ca.gov                        *Counsel for the Commonwealth of Massachusetts*
Kevin.Quade@doj.ca.gov
Malcolm.Brudigam@doj.ca.gov
William.Setrakian@doj.ca.gov

*Counsel for the State of California*

**AARON FORD**                                 **NICHOLAS W. BROWN**
Attorney General of Nevada                     Attorney General of Washington

By: */s/ K. Brunetti Ireland*                  By: */s/ Tera M. Heintz*
                                               Tera M. Heintz*
K. Brunetti Ireland*                           Cristina Sepe*
    *Chief of Special Litigation*              Karl D. Smith*
1 State of Nevada Way, Suite 100                   *Deputy Solicitors General*
Las Vegas, NV 89119                            1125 Washington Street SE
(702) 486-9246                                 PO Box 40100
KIreland@ag.nv.gov                             Olympia, WA 98504-0100
                                               (360) 753-6200
*Counsel for the State of Nevada*              tera.heintz@atg.wa.gov
                                               cristina.sepe@atg.wa.gov
                                               karl.smith@atg.wa.gov


                                               *Counsel for the State of Washington*


*(additional counsel on following page)*

11

**KRISTIN K. MAYES**
Attorney General of the State of Arizona

By: */s/ Kara Karlson*
Kara Karlson*
Karen J. Hartman-Tellez*
Joshua M. Whitaker*
Syreeta Tyrell*
    *Assistant Attorneys General*
2005 North Central Ave.
Phoenix, AZ 85004
(602) 542-8118

*Counsel for the State of Arizona*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Maura Murphy*
Maura Murphy*
    *Deputy Associate Attorney General*
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5020

*Counsel for the State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston*
    *Director of Impact Litigation*
Vanessa L. Kassab*
    *Deputy Attorney General*
820 N. French Street
Wilmington, DE 19801
(302) 683-8899

*Counsel for the State of Delaware*

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
    *Solicitor General*
Peter Baumann*
    *Senior Assistant Attorney General*
1300 Broadway
Denver, Colorado 80203
(720) 508-6400

*Counsel for the State of Colorado*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Virginia A. Williamson*
Virginia A. Williamson*
    *Assistant Attorney General*
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6584

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti*
Erik Grill*
    *Assistant Attorneys General*
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659

*Counsel for the State of Michigan*

*(additional counsel on following page)*

12

**BRIAL L. SCHWALB**
Attorney General of the District of Columbia

By: */s/ Eliza H. Simon*
Eliza H. Simon*
    *Senior Counsel*
400 6th St. NW
Washington, D.C. 20001
(202) 741-5221

*Counsel for the District of Columbia*


**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Vikas Didwania*
Vikas Didwania*
    *Complex Litigation Counsel*
Alex Hemmer*
    *Deputy Solicitor General*
Holly F.B. Berlin*
    *Assistant Attorney General*
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526

*Counsel for the State of Illinois*


**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Katherine W. Thompson*
Katherine W. Thompson*
    *Special Counsel*
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800

*Counsel for the State of Maine*


**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Allen Cook Barr*
Allen Cook Barr*
    *Assistant Attorney General*
Lindsey E. Middlecamp*
    *Special Counsel*
445 Minnesota Street, Suite 600
St. Paul, MN, 55101
(651) 300-0711

*Counsel for the State of Minnesota*


**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Meghan K. Musso*
Meghan K. Musso*
Jonathan Mangel*
Joshua P. Bohn*
    *Deputy Attorneys General*
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5276

*Counsel for the State of New Jersey*


**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Bailey Colfax*
Bailey Colfax*
    *Assistant Attorney General*
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060

*Counsel for the State of New Mexico*


*(additional counsel on following page)*

13

**LETITIA JAMES**
Attorney General of New York

By: */s/ Colleen K. Faherty*
Colleen K. Faherty*
 *Special Trial Counsel*
Rabia Muqaddam*
 *Chief Counsel, Federal Initiatives*
28 Liberty Street
New York, NY 10005
(212) 416-6046

*Counsel for the State of New York*


**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
 *Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153

*Counsel for the State of Vermont*


**JEFF JACKSON**
Attorney General of North Carolina

Laura Howard
Chief Deputy Attorney General

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
 *Associate Deputy Attorney General*
114 W. Edenton Street
Raleigh, NC 27603

*Counsel for the State of North Carolina*


**JAY JONES**
Attorney General for the Commonwealth of Virginia

By: */s/ Tillman J. Breckenridge*
Tillman J. Breckenridge*
 *Solicitor General*
202 North Ninth Street
Richmond, VA 23219

*Counsel for the Commonwealth of Virginia*


**DAN RAYFIELD**
Attorney General, State of Oregon

By: */s/ Thomas H. Castelli*
Thomas H. Castelli*
 *Special Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880

*Counsel for the State of Oregon*


**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Kyla Duffy*
Kyla Duffy*
 *Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400

*Counsel for the State of Rhode Island*

*(additional counsel on following page)*

14

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s/ Lynn Lodahl*
Lynn Lodahl*
    *Assistant Attorney General*
17 West Main Street
Madison, WI 53707-7857
(608) 264-6219

*Counsel for the State of Wisconsin*

**JOSH SHAPIRO**
Governor of the Commonwealth of Pennsylvania

By: */s/ Michael J. Fischer*
Michael J. Fischer*
Jacob B. Boyer*
    *Deputy General Counsel*
30 North Third Street, Suite 200
Harrisburg, PA 17101
(717) 831-2847

*Counsel for the Governor of the Commonwealth of Pennsylvania*

*\*Admitted pro hac vice or pro hac vice applications forthcoming*

15