**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS; et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States*, et al., <br><br> *Defendants.* | Civil Action No. 1:26-cv-11549-IT |
| STATE OF CALIFORNIA; et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*, <br><br> *Defendants*. | Civil Action No. 1:26-cv-11581-IT |

**PLAINTIFF STATES' OPPOSITION TO MOTION TO INTERVENE**

**INTRODUCTION**

Plaintiff States oppose the request of the States of Alabama, Florida, Indiana, Kansas, Louisiana, Missouri, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, and Texas ("putative intervenors") to intervene in this case to support the Defendants' position in defense of the President's Executive Order No. 14,399, entitled *Ensuring Citizenship Verification and Integrity in Federal Elections* ("EO"). In these circumstances, where "a would-be intervenor seeks to appear alongside a governmental body in defense of the validity of some official action, a rebuttable presumption arises that the government adequately represents the interests of the would-be intervenor." *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020). The putative intervenors cannot overcome this presumption here. Moreover, because the putative intervenors' claimed protectable interest appears to rely exclusively on the mistaken assumption that Plaintiff States seek nationwide injunctive relief—where in fact they seek only to enjoin the EO as applied to Plaintiff States themselves—the putative intervenors have failed to demonstrate a cognizable interest sufficient to warrant their intervention in this case.

The Court should deny the motion to intervene. If, however, the Court grants the motion, the Court should order the putative intervenors to abide by the same briefing and hearing schedule that the Court already has entered. *See* Order, Doc. No. 88.

**BACKGROUND**

**A. The EO**

Plaintiff States challenge three provisions of the EO. Section 2 of the EO directs the compilation and transmission by DHS of "State Citizenship Lists," derived from federal records and database sources, of "individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State." EO § 2(a). Once compiled, the State Citizenship List must be transmitted to

1

States' chief elections officials "no fewer than 60 days before each regularly scheduled Federal election[.]" *Id.* Section 2 of the EO threatens prosecution for any "State and local officials or any others involved" in federal election administration "who issue Federal ballots" to voters not on a State Citizenship List. *Id.* § 2(b).

Section 3 of the EO directs that "no fewer than 90 days" before any Federal election, "any State may choose to notify the USPS" if the State intends to allow mail or absentee ballots to be transmitted by mail, and if it intends to submit a "list of voters eligible to vote" by mail in that election. EO § 3(b)(ii). Section 3 also prohibits USPS from transmitting a completed mail ballot packet from any voter not included on a USPS-generated list. *Id.* § 3(b)(iii), (iv). Like Section 2, Section 3 threatens criminal prosecution for States, election officials, and voters. *Id.* §§ 3(a), 3(c). Lastly, Section 3 requires USPS to adopt regulations that govern numerous, specific aspects of mail ballots such as specific markings and tracking technology. *Id.* §§ 3(b), 3(d).

Section 5 of the EO threatens to withhold funding from States and localities for any "noncompliance with Federal law" and reiterates threats of investigations and criminal prosecutions for State and local entities and elections officials. EO § 5. It demands that States preserve "all records and materials—excluding ballots cast—evidencing voter participation in any Federal election" for five years, *id.*, which exceeds the period set by federal law.

**B. This Litigation**

Plaintiff States filed their complaint on April 3, 2026, challenging Sections 2, 3, and 5 of the EO and raising three causes of action. Complaint, Doc. No. 1 ¶¶ 116–127, 146–182. On April 13, 2026, Plaintiff States and the Defendants filed a joint motion for a dispositive briefing schedule and requested an expedited hearing date. Jt. Mot., Doc. No. 37. In that joint motion, Plaintiff States stated that the EO has "profound consequences" for their administration of

upcoming primary and general elections.  For their part, Defendants "d[id] not agree" that the EO "will impose concrete effects on Plaintiffs, if at all, on the timetable that Plaintiffs have indicated," and "respectfully disagree[d]" with Plaintiff States' "characterization of the [EO]." *Id.* at 2–3.  Defendants stated that they planned to oppose Plaintiff States' forthcoming motion for summary judgment by filing a dispositive motion.  *Id.* at 4.  The next day, the Court adopted the parties' proposed schedule and set a hearing on the motions for June 2, 2026.  Doc. No. 39.

Two days later, on April 16, 2026, the Defendants moved to transfer the case to the United States District Court for District of Columbia (D.D.C.), where three lawsuits challenging the EO have been filed and consolidated.  Doc. No. 55.  *See DSCC v. Trump*, No. 26-cv-1114 (D.D.C. Apr. 1, 2026), *League of United Latin Am. Citizens v. Exec. Office of the President*, No. 26-cv-1132 (D.D.C. Apr. 2, 2026), and *Nat'l Ass'n for the Advancement of Colored People v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026); No. 26-cv-1114 (D.D.C. Apr. 1, 2026), Order Consolidating Cases, Doc. No. 27.  Plaintiff States opposed the transfer motion.  Doc. No. 86.

### C.  The Putative Intervenors

The putative intervenors moved to intervene in this action on April 21, 2026.  Doc. Nos. 73–74, 91.  They did not attach a responsive pleading, and instead filed their own motion to transfer the case to D.D.C.  Doc. Nos. 75–76.  The same day, the putative intervenors moved to intervene in the other challenge to the EO pending in this District, *League of Women Voters of Massachusetts, et al. v. Donald J. Trump, et al.*, 26-cv-11549 (D. Mass. Apr. 2, 2026), again omitting a responsive pleading and instead filing a motion to transfer that case to D.D.C.  *League of Women Voters*, No. 26-cv-11549, Mot. to Intervene, 44–45; Mot. to Transfer, Nos. 46–47.

The day before moving to intervene in the Massachusetts cases, the putative intervenors moved to intervene in the consolidated D.D.C. cases.  *League of United Latin Am. Citizens*, No.

3

26-cv-1132, Mot. to Intervene, Doc. No. 23.  There, unlike in the Massachusetts cases, they attached to their intervention request a proposed motion to dismiss.  *Id.*, Mem. in Supp. of Intervener States' Mot. to Dismiss, Doc. No. 23-3.  In the proposed motion, the putative intervenors argue that the D.D.C. plaintiffs lack standing to challenge Sections 2 and 3 of the EO, and that those plaintiffs' claims are unripe and "[f]undamentally" "all premature."  *Id.* at 9.

On April 22, 2026, the Court consolidated this action with *League of Women Voters* for briefing and hearing on motions.  Doc. No. 88.  Plaintiff States opposed the Defendants' motion to transfer (Doc. No. 86) and filed notice of their intent to oppose the putative intervenors' motion to intervene, Doc. No. 91.  The Court directed the parties to respond to the putative intervenors' motion by April 27, 2026.  Order, Doc. No. 98.  And on April 23, 2026, Plaintiff States moved for summary judgment in accordance with the scheduling order.  Doc. No. 97.

## ARGUMENT

The putative intervenors' requests to intervene should be denied because they have failed to establish a right to intervene under Federal Rule of Civil Procedure 24(a) or to show entitlement to permissive intervention under Rule 24(b), for two independent reasons.  First, the First Circuit presumes "that the government will adequately defend its actions." *State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001).  The putative intervenors can carry "the burden of persuasion" to rebut this presumption only by "'a strong affirmative showing' that the [defendant] agency … is not fairly representing the [putative intervenors'] interests." *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998) (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984)).  The putative intervenors cannot do so, which is sufficient alone to deny their motion.  Second, the putative intervenors fail to identify any direct harm that they would suffer (and which they would seek to avert) from relief issuing *to the Plaintiff States*, which is another independently sufficient reason to deny their

4

motion.  In these circumstances, the Court should not permit intervention and should not amend its scheduling order.  At most, this Court should grant the putative intervenors leave to file an amicus brief, which would allow them to express their views on the EO.

## I.    THE PUTATIVE INTERVENORS HAVE NOT DEMONSTRATED A RIGHT TO INTERVENE.

An applicant seeking intervention as of right under Rule 24(a) must show (among other things) that it has "a direct and substantial interest in the subject matter of the litigation" that is "inadequately represented by existing parties" and that may as a practical matter be "impair[ed] or impede[d]" by the litigation.  *Caterino v. Barry*, 922 F.2d 37, 39–40 (1st Cir. 1990).  The putative intervenors fail to establish that any interest they have is inadequately represented by the Defendants.  They also fail to establish that any interest they have would be impaired or impeded by this litigation, an independent basis to deny intervention as of right.

### A.    The Putative Intervenors Cannot Overcome the Controlling Presumption that Defendants Adequately Represent Their Interests.

The First Circuit's "decisions have proceeded on the assumption, subject to evidence to the contrary, that the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor." *U.S. Fish & Wildlife Serv.*, 262 F.3d at 19.  That presumption applies "even if the governmental defendant itself consents to intervention." *Cotter v. Mass. Ass'n of Minority L. Enf 't Officers*, 219 F.3d 31, 35 (1st Cir. 2000).  Here, the Defendants oppose the request for intervention as of right and take no position on the request for permissive intervention.  Doc. No. 109 at 2.  The putative intervenors bear "the burden of overcoming the presumption" that the Defendants will adequately represent the putative intervenors' interests in defending the EO. *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999).  They cannot carry that burden.

To start, the presumption of adequate representation is borne out here because, by all available indications,[1] the Defendants and the putative intervenors are "in legal lockstep." *Patch*, 136 F.3d at 208. The putative intervenors' motion makes clear that they oppose the Plaintiff States' position challenging the EO and support the Defendants' position in defense of it. *See, e.g.*, Mem. in Supp. of Mot. Intervene, Doc. No. 74 at 6–7 (stating support for the EO and opposition to Plaintiff States' claims), 11–13 (describing perceived benefits of the EO). In addition, the putative intervenors filed a proposed motion to transfer this action to the District of Columbia, which is nearly identical to the Defendants' pending motion to transfer. *Compare* Doc. No. 75, *with* Doc. No. 55. Likewise, their legal arguments in support of transfer merely summarize and rehash those made in the Defendants' supporting memorandum. *Compare* Doc. No. 76 at 2–3, *with* Doc. No. 56 at 5–15.

Notably, the putative intervenors' proposed motion to dismiss in the D.D.C. cases, which asserts that those plaintiffs' claims are "premature," echoes the Defendants' strategy in this case of filing a forthcoming dispositive motion and their suggestion that they similarly view Plaintiff States' claims as premature. *Compare League of United Latin Am. Citizens*, No. 26-cv-1132, Mot. to Intervene, Doc. No. 23-3 at 9, *with* Doc. No. 37 at 3 (Defendants' statement that the EO will not "impose concrete effects on Plaintiffs, if at all, on the timetable" that Plaintiff States assert). This alignment suggests that the Defendants will adequately represent the putative intervenors' interests here. And that conclusion is fully consistent with Defendants' oppositions

---

[1] As described above, the putative intervenors did not attach the responsive pleading required by Federal Rule of Civil Procedure 24(c) to their motion to intervene (although they did comply with Rule 24(c) in the D.D.C. case). To the extent putative intervenors' legal interests or positions in this action are unclear, their failure to attach a pleading as required by Rule 24(c) (and thereby not set forth their legal position with clarity for comparison with the Defendants') constitutes prejudice to Plaintiff States, and intervention could be denied on that basis as well. *See Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 515 (1st Cir. 2017) (denial of a motion to intervene based solely on the movant's failure to attach a pleading is improper only "absent prejudice to any party").

to the motions to intervene in both the D.D.C. cases and the Massachusetts cases, which each assert that "[t]o the extent that Intervenor States have an interest in this matter, it will be adequately represented by the United States, which intends to vigorously defend this suit." *DSCC v. Trump*, 26-cv-1114, Doc. No. 88 at 2; *League of Women Voters*, 26-cv-11549, Doc. No. 79, at 2; Resp. to Mot. to Intervene, Doc. No. 109, at 2.

Moreover, the putative intervenors identify no concrete distinction between their interests and the Defendants', offering only that such distinctions "might" materialize. Seeking to distinguish their interests and arguments from those of the Defendants, the putative intervenors speculate that they are "*likely* [to] differ from the federal government on broader theoretical questions about the division of authority between States and the federal government over elections—a difference that again *might* lead to the Intervener States making different litigation choices than the existing federal defendants." Mem., Doc. No. 74 at 7–8 (emphasis added). Such conjecture falls short of the "strong affirmative showing" of inadequate representation that the putative intervenors must make. *Patch*, 136 F.3d at 207. The First Circuit has made clear that "[t]he general notion that the [government] represents 'broader' interests at some abstract level is not enough." *Daggett v. Comm'n on Govt'l Ethics & Elec. Pracs.*, 172 F.3d 104, 112 (1st Cir. 1999) (citing *Patch*, 136 F.3d at 207–08). A bare assertion that a would-be intervenor has "a more specialized interest," where the government defendant and intervenor "have the same ultimate goal of upholding and defending" the challenged action, does not suffice. *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982). Nor does adequate representation require "perfect identity of motivational interests between the movant-intervenor and the government." *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021).

The putative intervenors likewise identify no difference in likely strategy with the Defendants, only arguing that they *might* make different strategic choices in defending the EO because they are *likely* to disagree with the federal government on abstract questions of state and federal authority.  Mem., Doc. No. 74 at 16.  But they fail to identify a single actual difference in strategy, much less how this demonstrates that their interests are inadequately represented by the Defendants.  The putative intervenors also claim that "only states can make anti-commandeering arguments and contest the federalism concerns of Plaintiffs," *id.*, but they identify no reason why the Defendants could not, and will not, make such arguments.  Nor do the putative intervenors indicate what "anti-commandeering argument" they might plausibly make.

The putative intervenors rely on a footnote in a 1972 Supreme Court decision, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), and a Sixth Circuit case, *Lucas Cnty. Bd. of Comm'rs v. U.S. Env't Prot. Agency*, 169 F.4th 689, 698 (6th Cir. 2026), to attempt to minimize the burden they must carry to overcome the presumption of adequate representation here.  But in the First Circuit, putative intervenors bear "the burden of persuasion" to rebut that presumption by "a strong affirmative showing" that the federal government is not fairly representing their interests.  *Patch*, 136 F.3d at 207 (citations omitted); *see Victim Rts. L. Ctr.*, 988 F.3d at 561-62; *T-Mobile*, 969 F.3d at 39-40; *U.S. Fish & Wildlife Serv.*, 262 F.3d at 19; *Daggett*, 172 F.3d at 111; *Illinois v. Noem*, No. 1:25-cv-00495, Text Order (D.R.I. Nov. 24, 2025) (denying Texas's motion to intervene because "Texas has failed to make the necessary 'strong affirmative showing' that the United States does not adequately represent its interests" (quoting *T-Mobile*, 969 F.3d at 39)).  Because the putative intervenors have failed to make that showing and instead offered only generalized speculation that interests might diverge, they have

not carried their burden to rebut the presumption of adequate representation by the Defendants, and intervention should be denied.

> **B.      The Putative Intervenors' Interest-Based Arguments Rely on a Misapprehension of the Relief Sought in This Case.**

The putative intervenors argue that Plaintiff States' success in this action would "block" the federal government from providing certain resources to them, thereby purportedly necessitating their participation in this case to protect that interest.  Mem., Doc. No. 74 at 7, 11–12, 13–14.  But this argument hinges on the putative intervenors' misapprehension that the Plaintiff States are seeking nationwide injunctive relief that would prevent the Defendants from implementing the EO as to non-party states.  *See id.* at 14 ("If Plaintiffs succeed in enjoining enforcement of the Executive Order, the federal government will be blocked from providing the State Citizenship List to States that want to receive it.  This lawsuit could thus prevent the Intervener States from obtaining a valuable resource from the federal government.").

To the contrary, Plaintiff States seek injunctive relief solely for themselves.  Mot. for Summ. J., Doc. No. 97 at 2, 5–6 (requesting injunctive relief as to "Plaintiff States"); Proposed Order in Supp. of Mot. for Summ. J., Doc. No. 97-1 at 2–4 (same).  And even as to the Plaintiff States, the injunctive relief sought would not "bar the federal government from providing assistance with verifying the citizenship or eligibility of any voter if the assistance is provided at the request of any Plaintiff State."  Doc. No. 97-1, at 3–4.  Nor would the relief bar the putative intervenors from voluntarily designing their ballot envelopes so that they are "officially marked" and "can be tracked." Mem., Doc. No. 74, at 13.  Accordingly, the injunctive relief Plaintiff States request would neither bar the Defendants from implementing the EO as to the putative intervenors, nor prevent the putative intervenors from requesting the resources they believe the EO can deliver or following USPS mailing recommendations for election mail.  Because the

9

putative intervenors' interest-based arguments are premised entirely on the mistaken assumption that Plaintiff States are seeking nationwide injunctive relief, they have failed to demonstrate a cognizable interest that their exclusion from this litigation would impair them from protecting.

## II.   THE PUTATIVE INTERVENORS ALSO FAIL TO JUSTIFY PERMISSIVE INTERVENTION.

The putative intervenors' failure to establish a right of intervention "effectively disposes of the permissive intervention question as well." *Caterino*, 922 F.2d at 39.  Although permissive intervention may be allowed when it does not "unduly . . . prejudice the adjudication of the original parties' rights" and the movant "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b), it also may be denied where, as here, existing parties adequately represent the putative intervenor's interest.  *See T-Mobile*, 969 F.3d at 41; *Mass. Food Ass'n*, 197 F.3d at 568; *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992).  Because the putative intervenors have failed to "show that the [federal] government would not adequately protect their interests," permissive intervention should be denied on that basis, as well.  *Victim Rts. L. Ctr.,* 988 F.3d at 564.  Instead, "the amicus procedure provides sufficient opportunity for [the putative intervenors] to present their view." *Id.*

The Court should therefore also deny the request for permissive intervention under Rule 24(b).  Plaintiff States would not oppose the putative intervenors' participation as amici in briefing dispositive motions in this action.

### CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that the Court deny the putative intervenors' motion to intervene and deny as moot their proposed motion to transfer this action.  If the Court allows the motion to intervene, the Court should order intervenors to comply with the schedule that the Court previously ordered.

Dated: April 27, 2026                                      Respectfully submitted.


**ROB BONTA**                                             **ANDREA JOY CAMPBELL**
Attorney General of California                             Attorney General of Massachusetts

By: */s/ Michael S. Cohen*                                By: */s/ Vanessa A. Arslanian*
Michael S. Cohen*                                         M. Patrick Moore (BBO No. 670323)
    *Deputy Attorney General*                                 *First Assistant Attorney General*
Thomas S. Patterson*                                      Vanessa A. Arslanian (BBO No. 688099)
    *Senior Assistant Attorney General*                       *State Trial Counsel*
Seth E. Goldstein*                                        Jared B. Cohen (BBO No. 689217)
    *Supervising Deputy Attorney General*                 Jak Kundl (BBO No. 713951)
Anne P. Bellows*                                              *Assistant Attorneys General*
Malcolm A. Brudigam*                                      One Ashburton Place
Robert William Setrakian*                                 Boston, MA 02108
    *Deputy Attorneys General*                            (617) 963-2107
1300 I Street, P.O. Box 944255                            Vanessa.Arslanian@mass.gov
Sacramento, CA 95814                                      Pat.Moore@mass.gov
(916) 210-6090                                            Jared.B.Cohen@mass.gov
Michael.Cohen@doj.ca.gov                                  Jak.Kundl@mass.gov
Seth.Goldstein@doj.ca.gov
Anne.Bellows@doj.ca.gov
Malcolm.Brudigam@doj.ca.gov                               *Counsel for the Commonwealth of Massachusetts*
William.Setrakian@doj.ca.gov


*Counsel for the State of California*


**AARON FORD**                                            **NICHOLAS W. BROWN**
Attorney General of Nevada                                 Attorney General of Washington

By: */s/ K. Brunetti Ireland*                             By: */s/ Tera M. Heintz*
K. Brunetti Ireland*                                      Tera M. Heintz*
    *Chief of Special Litigation*                         Cristina Sepe*
1 State of Nevada Way, Suite 100                          Karl D. Smith*
Las Vegas, NV 89119                                           *Deputy Solicitors General*
(702) 486-9246                                            1125 Washington Street SE
KIreland@ag.nv.gov                                        PO Box 40100
                                                          Olympia, WA 98504-0100
*Counsel for the State of Nevada*                         (360) 753-6200
                                                          Tera.Heintz@atg.wa.gov
                                                          Cristina.Sepe@atg.wa.gov
                                                          Karl.Smith@atg.wa.gov

                                                          *Counsel for the State of Washington*


*(additional counsel on following page)*


11

**KRISTIN K. MAYES**
Attorney General of the State of Arizona

By: */s/ Kara Karlson*
Kara Karlson*
Karen J. Hartman-Tellez*
Joshua M. Whitaker*
Syreeta Tyrell*
    *Assistant Attorneys General*
2005 North Central Ave.
Phoenix, AZ 85004
(602) 542-8118

*Counsel for the State of Arizona*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Maura Murphy*
Maura Murphy*
    *Deputy Associate Attorney General*
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5020

*Counsel for the State of Connecticut*

**BRIAL L. SCHWALB**
Attorney General of the District of
Columbia

By: */s/ Eliza H. Simon*
Eliza H. Simon*
    *Senior Counsel*
400 6th St. NW
Washington, D.C. 20001
(202) 741-5221

*Counsel for the District of Columbia*

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
    *Solicitor General*
Peter Baumann*
    *Senior Assistant Attorney General*
1300 Broadway
Denver, Colorado 80203
(720) 508-6400

*Counsel for the State of Colorado*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston*
    *Director of Impact Litigation*
Vanessa L. Kassab*
    *Deputy Attorney General*
820 N. French Street
Wilmington, DE 19801
(302) 683-8899

*Counsel for the State of Delaware*

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Vikas Didwania*
Vikas Didwania*
    *Complex Litigation Counsel*
Alex Hemmer*
    *Deputy Solicitor General*
Holly F.B. Berlin*
    *Assistant Attorney General*
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526

*Counsel for the State of Illinois*

*(additional counsel on following page)*

12

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Katherine W. Thompson*
Katherine W. Thompson*
    *Special Counsel*
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800

*Counsel for the State of Maine*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti*
Erik Grill*
    *Assistant Attorneys General*
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659

*Counsel for the State of Michigan*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Meghan K. Musso*
Meghan K. Musso*
Jonathan Mangel*
Joshua P. Bohn*
    *Deputy Attorneys General*
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5276

*Counsel for the State of New Jersey*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Virginia A. Williamson*
Virginia A. Williamson*
    *Assistant Attorney General*
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6584

*Counsel for the State of Maryland*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Allen Cook Barr*
Angela Behrens*
Allen Cook Barr*
    *Assistant Attorneys General*
Lindsey E. Middlecamp*
    *Special Counsel*
445 Minnesota Street, Suite 600
St. Paul, MN, 55101
(651) 300-0711

*Counsel for the State of Minnesota*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Bailey Colfax*
Bailey Colfax*
    *Assistant Attorney General*
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060

*Counsel for the State of New Mexico*

*(additional counsel on following page)*

13

**LETITIA JAMES**
Attorney General of New York

By: */s/ Colleen K. Faherty*
Colleen K. Faherty*
 *Special Trial Counsel*
Rabia Muqaddam*
 *Chief Counsel, Federal Initiatives*
28 Liberty Street
New York, NY 10005
(212) 416-6046

*Counsel for the State of New York*

**DAN RAYFIELD**
Attorney General, State of Oregon

By: */s/ Thomas H. Castelli*
Thomas H. Castelli*
 *Special Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880

*Counsel for the State of Oregon*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
 *Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153

*Counsel for the State of Vermont*

**JEFF JACKSON**
Attorney General of North Carolina

Laura Howard
Chief Deputy Attorney General

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
 *Associate Deputy Attorney General*
114 W. Edenton Street
Raleigh, NC 27603

*Counsel for the State of North Carolina*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Kyla Duffy*
Kyla Duffy*
 *Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400

*Counsel for the State of Rhode Island*

**JAY JONES**
Attorney General for the Commonwealth of Virginia

By: */s/ Tillman J. Breckenridge*
Tillman J. Breckenridge*
 *Solicitor General*
202 North Ninth Street
Richmond, VA 23219

*Counsel for the Commonwealth of Virginia*

*(additional counsel on following page)*

14

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s/ Lynn Lodahl*
Lynn Lodahl*
Charlotte Gibson*
    *Assistant Attorneys General*
17 West Main Street
Madison, WI 53707-7857
(608) 264-6219

*Counsel for the State of Wisconsin*

**JOSH SHAPIRO**
Governor of the Commonwealth of Pennsylvania

By: */s/ Michael J. Fischer*
Michael J. Fischer*
    *Executive Deputy General Counsel*
Jacob B. Boyer*
    *Deputy General Counsel*
30 North Third Street, Suite 200
Harrisburg, PA 17101
(717) 831-2847

*Counsel for the Governor of the Commonwealth of Pennsylvania*


*\*Admitted pro hac vice or pro hac vice applications forthcoming*

15