# EXHIBIT B

**Declaration of Steven W. Monteith (July 1, 2026)**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

STATE OF CALIFORNIA, *et al.*,

        Plaintiffs,

        v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

        Defendants.

Case No. 1:26-cv-11581-IT

**DECLARATION OF STEVEN W. MONTEITH**

I, Steven W. Monteith, under penalty of perjury and in lieu of affidavit as permitted by 28 U.S.C. § 1746, state as follows:

1. I have been employed by the United States Postal Service (Postal Service) since 1989 and am currently the Chief Customer and Marketing Officer (CCMO) and Executive Vice President of the Postal Service, a position I have held since November 2020.  In this position, my responsibilities as assigned by the Postmaster General include the planning and implementation of corporate strategies and initiatives to increase revenue and financial contributions to the Postal Service, as well as overseeing the workforces in several organizational units: Customer Experience, International Business, Marketing, Product Solutions, Sales Intelligence, and Industry Engagement and Outreach. Prior to my current position, I held positions at the Postal Service in operations, finance, marketing and retail.

2. I am familiar with Executive Order 14,399, titled "Ensuring Citizenship Verification and Integrity in Federal Elections," which directs the organization to initiate a proposed rulemaking containing the provisions described in Section 3(b) of the Executive Order. I am also aware of this Court's recent Opinion and Order declaring the Executive Order legally void and enjoining the Postal Service from continuing to take steps to implement Section 3 of the Executive Order as it as it applies to the Plaintiff States and as it applies to the upcoming November 3, 2026 election or any earlier federal election. I submit this declaration in support of Defendants' motion for stay of the Court's injunctive relief.

3. The Postal Service has taken steps to comply with the Court's June 26, 2026 Order, including by planning to provide written notice of the Order to all Postal Service employees that Section 3 of the Executive Order is unlawful, null, and void as to Plaintiff States with respect to the November 3, 2026 or any earlier federal election.

4. In reality, absent a stay, the injunction as it applies to the Plaintiff States will likely result in the inability of the Postal Service to issue a final rule that would be applicable to the November 3, 2026 election for any states. It is not feasible for the Postal Service to implement a final rule with respect to states other than the Plaintiff States. Accordingly, even if the Postal Service separates out the work related to the Plaintiff States from non-Plaintiff States, the effect of the injunction, if not stayed, means it is likely that the Postal Service could not complete all of the tasks necessary to put a final rule in place, (if it in fact issues a final rule), prior to the November 3, 2026 election for any state.

5. The Postal Service operates a nationwide network and provides nationwide guidance with respect to Election Mail. Operationally, it would not be possible for us to put a two-tiered system in place where one set of rules apply to the ballot mail of the Plaintiff

2

States, and another applies to the remaining states.  Doing so would cause operational confusion and significantly increase the complexity and efficiency of implementing any final rule.  Thus, even if the Defendants prevail on appeal, absent a stay, the Postal Service is likely to be unable to implement a final rule in time for the November election.

6. On June 2, 2026, the Postal Service published a Proposed Rule in the Federal Register. The Proposed Rule, if ultimately adopted in its current form into a final rule, would require state and local election officials to use envelopes that meet certain design requirements, such as including trackable barcodes and the Election Mail logo, to transmit ballots for Federal elections.  It would also require those officials, or their authorized designees, to provide a list to the Postal Service of voters who are mailed ballots for Federal elections.  Those lists will include the voter's names and addresses along with barcode information on the outgoing and return ballot envelopes ballot mailers prepared.  The Proposed Rule envisions the creation of a Postal Service portal in which election officials or their designees will submit this information.  Before any information can be submitted to the Portal, the Postal Service must create a new system or records notice (SORN) in accordance with the Privacy Act.

7. Consistent with the Proposed Rule, the Postal Service has been taking steps to create a Postal Service portal that state and local election officials, or their designees, will utilize to provide their lists to the Postal Service of voters who are mailed ballots for Federal elections.  While we are continuing to work on the Portal for elections occurring after November 3, 2026, the delay in being able to coordinate with all states on use of the Portal will severely hamper our ability to implement a final rule applicable to the November 2026 election.  By the time that the first mail-in ballot is ready to mail, those

3

mailers of outgoing ballots to which a final rule would apply must have access to the system, be registered as a user, and understand how to use it, so that they can provide names of voters they are sending mail-in or absentee ballots to, as well as the barcodes for the outgoing and return mail access.  We expect, based on conversations with election officials, that at least some states will be preparing to mail their first mail-in ballots by the end of August, which is two months away.

8.  For states to be ready to use the Portal, we need enough time prior to the November 2026 election to train our employees on use of the Portal, and to coordinate with mailers.  We will also need to coordinate with mailers on the use of envelopes that meet certain design requirements, and the inclusion of trackable barcodes and the Election Mail logo needed to transmit ballots for Federal elections, with barcode information being submitted to the Portal. Any communications regarding mailpiece design and preparation will need to be provided to state election officials or their designees with enough time for them to print envelopes that would meet the final specifications of any final rule.  This guidance must be uniform and cannot be bifurcated between Plaintiff States and non-Plaintiff States.

9.  Given the challenges of moving forward with a final rule that applies to some, but not all states, absent a stay, the Postal Service will likely be unable to implement a final rule should Defendants prevail on appeal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed at Washington, D.C. on the 1st day July 2026

E-SIGNED by Steven Monteith
on 2026-07-01 18:06:23 EDT

Steven W. Monteith

4