**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

STATE OF CALIFORNIA, et al.,

       *Plaintiffs,*

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, et al.,

       *Defendants,*

   and

STATE OF MISSOURI, et al.,

       *Intervenor-Defendants*.

Case No. 1:26-cv-11581-IT

### PLAINTIFF STATES' OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR A STAY PENDING APPEAL

A stay pending appeal is "an 'intrusion into the ordinary process of administration and judicial review,'" and is "'not a matter of right.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). To obtain such extraordinary relief, the "burden is on" the defendant to show a "likelihood of success" on appeal and that "the equities favor a stay." *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024). Federal Defendants have not carried that burden. To the contrary, both the merits and the equities weigh heavily against their request.

Federal Defendants' motion for a stay pending appeal retreads ground that this Court has already carefully considered. Specifically, Federal Defendants restate their standing and ripeness arguments and assert that they are likely to prevail on the merits because, among other reasons, they are entitled to the presumption of regularity and the EO "fits comfortably" within the President's authority. *Compare* Doc. No. 195 at 11–22 *with* Doc. No. 157 at 18–27, 42–48. Plaintiff States incorporate and refer the Court to their thorough briefing on these points. *See*

1

Doc. No. 106 at 19–31 (merits), 31–38 (standing and ripeness); Doc. No. 163 at 11–23 (standing and ripeness), 27–36 (merits).  For the reasons previously presented to the Court, Federal Defendants have no likelihood of success on these arguments.  *See Does 1–3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022) (application for stay factors includes likelihood of success on the merits); *see also SEC v. Lemelson*, 619 F. Supp. 3d 246, 248 (D. Mass. 2022) (same in district court).

Federal Defendants make a small number of new arguments.  For example, they respond to this Court's June 18, 2026 Memorandum & Order granting in part and denying in part Defendants' motions to dismiss, which partially dismissed Plaintiff States' claims on prudential ripeness grounds, and they raise new equitable harms.  *See, e.g.*, Doc. No. 195 at 15–16.  As to these new arguments, Plaintiff States offer the following preliminary responses given the time constraints, but can offer further briefing at the Court's request.

**Federal Defendants have no likelihood of succeeding on their ripeness arguments.** They attack this Court's "parsing of ripeness" as "illogical."  *Id.* at 15–16.  But Plaintiff States understand the Court to have necessarily and correctly found Article III ripeness satisfied as to Plaintiff States' claims overall, and to have dismissed the claims as to future elections solely on *prudential grounds*.[1]  *See* Doc. No. 190 at 7 ("Prudential Ripeness") (capitalization altered); *id.* at 11 ("[T]he challenge to the EO's implementation as it impacts elections <u>after</u> the November 3, 2026 election is dismissed without prejudice on prudential ripeness grounds."); *see also Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18, 24 (1st Cir. 2025) (discussing constitutional and prudential ripeness).  This Court's subsequent conclusion that Plaintiff States have standing because they are "experiencing injury now" and "will incur compliance costs" if "the EO's

---

[1] Plaintiff States do not concede that any portion of their claims should be dismissed as prudentially unripe.  Two observations, however, are appropriate here.  First, the Court's prudential determination that withholding judicial review as to the implementation of the EO in future elections "will pose little hardship," Doc. No. 190 at 11, does not contradict a conclusion that Plaintiff States' claims clear the constitutional ripeness bar.  *See N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 52 n.8 (1st Cir. 2021) ("hardship prong is solely prudential").  Second, the Court's partial dismissal *limits* the impact of the Court's injunction, to Federal Defendants' benefit.

directives go into effect," Doc. No. 191 at 16, refutes any suggestion of an Article III ripeness problem.

The law and the facts confirm that Plaintiff States' claims are constitutionally ripe. The Article III ripeness inquiry asks "'whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all.'" *Jensen*, 160 F.4th at 24 (quoting *Algonquin Gas Transmission, LLC v. Weymouth*, 919 F.3d 54, 62 (1st Cir. 2019)) (internal quotation omitted); *see also* Doc. No. 190 at 9–10 (same). This determination is situated within the larger question of whether the issues in the case are fit for judicial decision. *Jensen*, 160 F.4th at 24. Both standing and Article III ripeness can "boil down to the same question," since both inquiries hinge on "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Id.*

That constitutional standard is met here. The EO sets forth "multiple specific directives" requiring federal agencies to take specific actions "at specified times," and further requires that "definite substantive outcomes be implemented" in the immediate term. Doc. No. 190 at 16 (internal quotation omitted). These characteristics give rise to a ripe legal controversy. *See California v. Trump*, 805 F. Supp. 3d 387, 398 (D. Mass. 2025) (fitness prong satisfied where the EO "imposes a deadline" and "dictates the precise contours of [its] requirement" (citation omitted)); *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 86 (D.D.C. 2025) (claims challenging EO's "straightforward directive[s]" to federal agencies were ripe). As this Court explained, "it is neither speculation nor 'conjecture' that DHS will compile Confirmed Citizen Lists where directed to compile those lists by the President," nor that USPS will "simultaneously" engage in the rulemaking the EO directs. Doc. No. 190 at 16. And, as the Court recognized, these provisions are *already* causing harm to Plaintiff States because "the practical realities of running an election require Plaintiffs to take actions for the upcoming elections now." *Id.* at 13. In reaching this conclusion, the Court detailed the drumbeat of the EO's near-term implementation deadlines—several of which have already occurred, with others soon to follow—that are presently throwing and soon will further throw Plaintiff States'

"significant preparation and planning" for upcoming elections into chaos, effectively undoing preparations long underway. *Id.* at 11–13. For these reasons, Federal Defendants' rehashed reliance on *Trump v. New York*, 592 U.S. 125 (2020), which was thoroughly refuted in Plaintiff States' briefing, *see* Doc. No. 163 at 20–21, and previously rejected by this Court, *see* Doc. No. 190 at 15–16, again must fail.

Federal Defendants' own admissions further corroborate and support the Court's findings on Article III ripeness. They have admitted that the EO is a "directive from the President to his subordinates" mandating "certain actions." Doc. No. 155 ¶ 4. One need only read the EO to learn *what* actions are mandated. *See* EO §§ 2, 3, 4, 5. They have also repeatedly confirmed that federal agencies are moving to implement the EO. *See* Doc. No. 190 at 14 & n.22; Doc. Nos. 169, 183, 188, 189. In this latest filing, USPS's declarant testifies that the agency is moving to do so even while the relevant Proposed Rule is still in the notice-and-comment period. Decl. of S. Monteith, Doc. No. 194-2 ¶¶ 7, 8 (describing USPS work toward creating a portal for mail ballot lists and asserting the agency's operational needs related to implementing other Section 3 mandates, including formatting and barcode requirements). Against this record, Federal Defendants' bare "assertion that the agencies might implement the provisions in uncertain ways" is not sufficient to "create a ripeness problem." *See Nat'l Urb. League*, 783 F. Supp. 3d at 86 (additionally observing that "*Defendants* are the ones speculating by suggesting that the agencies will disregard these clear mandates when implementing the provisions").

Federal Defendants' charge that the Court's differing ripeness determinations as to 2026 and subsequent elections is "illogical" is equally unavailing. *See* Doc. No. 195 at 10. The Court's partial dismissal was based on the differing levels of hardship as to the impending 2026 elections and elections in the more distant future, Doc. No. 190 at 11, which is a "solely prudential" consideration, *N.H. Lottery Comm'n*, 986 F.3d at 52 n.8; *Reddy v. Foster*, 845 F.3d 493, 501 (1st Cir. 2017); *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 90 (1st Cir. 2013). Accordingly, that finding does not contradict or undermine the conclusion that Plaintiff States' claims satisfy Article III ripeness standards. As to the prudential

considerations, the Court correctly recognized that withholding judicial review before the November 2026 General Election would "inflict significant hardship" on Plaintiff States, who are in the midst of (extensively documented and factually unchallenged) election preparation.  Doc. No. 190 at 12.  The Court's differing analysis as to future elections does not undermine the fact that Plaintiff States face serious harms now.  *Id.* at 10–11.  Plaintiff States do not oppose the Court clarifying its ripeness determinations to address Federal Defendants' apparent confusion between Article III and prudential ripeness in the Court's orders.

**The Court should reject Federal Defendants' fearmongering about a broader injunction that the Court never issued.**  Plaintiff States sought an injunction only as to Plaintiff States, Doc. No. 97 at 5–6, and the Court entered an injunction consistent with that request: Federal Defendants, other than the President, are enjoined "from implementing or giving effect to Sections 2 and 3 of the EO with respect to the November 3, 2026 or any earlier federal election *in the Plaintiff States*[.]"  Doc. No. 191 at 34 (emphasis added).[2]  In fact, the Court expressly limited the injunction to only cover federal elections through November 3, 2026.  *See* Doc. No. 191 at 34.

Accordingly, Plaintiff States agree that the Court's injunction does not prevent Federal Defendants from "continuing work on the portal" related to Section 2(a) as to non-Plaintiff States, nor from "initiating or continuing investigations or prosecutions to enforce federal law . . . unrelated to Executive Order 14,399."  *See* Doc. No. 195 at 23.  Nor does the injunction preclude USPS from pursuing rulemaking under Section 3 as to elections in non-Plaintiff States or as to future elections.  Nevertheless, Plaintiff States believe that the proper course is for USPS to withdraw its Proposed Rule, *see* 91 Fed. Reg. 32,915, because it includes Plaintiff States

---

[2] This Court is not alone in enjoining the Proposed Rule.  Yesterday, on July 1, 2026, another federal court enjoined USPS "from implementing the standards and procedures described in the Proposed Rule" without limitation to its application in any particular State.  *NAACP v. USPS*, No. 1:20-cv-02295-EGS (D.D.C. July 1, 2026), Doc. No 181.  The court also declared that "the standards and procedures set forth" in USPS's Proposed Rule would violate a settlement agreement stemming from disruptive changes in mail service made by USPS in advance of the 2020 General Election.  *Id.*

within its sweep and anticipates implementation for the November 3, 2026 General Election.[3]  If the Court deems clarification on this score warranted, Plaintiff States do not oppose.

**Finally, the equities weigh strongly in favor of maintaining Plaintiff States' injunction.**  First, Federal Defendants fail to make the "necessary prerequisite" showing of irreparable harm.  *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024).  They point to the fact that *Plaintiff States* will be deprived of certain information arising from the EO's implementation, which plainly inflicts no harm on Federal Defendants.[4]  Doc. No. 195 at 23. They also posit that, absent a stay, federal agencies will struggle to implement the EO in time for the November 3, 2026 General Election even as to non-Plaintiff States.  *Id.* at 18–19.  Federal Defendants have forfeited this argument by failing to earlier contend that they would suffer injury from an injunction limited to Plaintiff States.  *Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, No. 1:26-cv-10877-AK, 2026 WL 1758422, at *2 (D. Mass. June 18, 2026) ("[A] motion for stay is not a vehicle for presenting new legal theories or issues."); *see also* Doc. No. 157 at 53–54, 56–57 (omitting argument about injury from injunction as to only some States).  In any event, Federal Defendants' assertions that the partial injunction would prevent implementation as to other States, *see* Doc. No. 194-1 ¶ 10; Doc. No. 194-2 ¶¶ 8, 9, are insufficient, as they amount to little more than "speculative and conclusory statement[s]," *New York v. Trump*, 133 F.4th 51, 72 (1st Cir. 2025); *see also Common Cause R.I. v. Gorbea*, 970 F.3d 11, 15 (1st Cir. 2020) (irreparable harm must be supported "as a matter of fact and reality").  They also fail to account for another court's injunction of USPS's Proposed Rule.  *See supra* at p. 5 n.2.  And Federal Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice" anyway.  *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *accord Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).

---

[3] Plaintiff States have also advocated for USPS to withdraw the Proposed Rule because it is unconstitutional and ultra vires, including in a comment letter filed by many Plaintiff States earlier today, and will continue to do so.

[4] The Court's order does not prohibit States from voluntarily working with the federal government to secure this information.  Doc. No. 191 at 35.

In reality, it is "substantial[] injur[y]" to Plaintiff States, not Federal Defendants, that hangs in the balance. *New York*, 133 F.4th at 65. As the Court correctly found, Plaintiff States have shown immediate and irreparable injury from Sections 2 and 3. Doc. No. 191 at 14–17; *see also* Doc. No. 190 at 13–14. A stay would require Plaintiff States to resume burdensome preparations to implement the EO, such as developing procedures for reviewing and correcting the Confirmed Citizenship List, redesigning ballot envelopes to comply with the requirements, and rush-ordering the new envelopes.[5] With mere months to go before the November 3, 2026 General Election, and many Plaintiff States administering primary elections in the intervening time, Doc. No. 191 at 14, complying with the EO would require diverting time and money from the most pressing election administration tasks when there is no time or money to spare, Doc. No. 191 at 15–16. The EO's "multiple references to criminal penalties, implicitly threaten[ing] . . . election officials" would hang above Plaintiff States along the way. Doc. No. 191 at 16. Only the relief ordered by this Court can provide the reassurance necessary for elections officials to focus on the critical tasks at hand and not the EO.

Second, Federal Defendants fail to demonstrate that a stay serves the public interest. Their sole argument is that a stay would relieve the President of a restraint on his power to "oversee[] the Executive Branch." Doc. No. 195 at 25. But "[t]he public has an important interest in making sure government agencies follow the law," which is precisely what this Court's order accomplishes. *Neighborhood Ass'n of the Back Bay, Inc. v. Fed. Transit Admin.*, 407 F. Supp. 2d 323, 343 (D. Mass. 2005), *aff'd*, 463 F.3d 50 (1st Cir. 2006). Moreover, a stay risks disenfranchising voters, which Federal Defendants have not disputed as a factual matter, apart

---

[5] *See* Doc. No. 191 at 15–16; *see also, e.g.*, Doc. No. 100-3 ¶¶ 19–26 (Nevada will have to divert significant resources to implement the Confirmed Citizenship List); Doc. No. 100-7 ¶ 12 (Connecticut diverted "time and attention from other critical election preparations" before this Court's order); Doc. No. 100-21 ¶¶ 71–75 (Rhode Island had already spent $50,000 on ballot envelopes approved by USPS pre-EO, but it will need to redo the process and reorder the envelopes if USPS proceeds under the EO); Doc. No. 100-10 ¶¶ 67–68 (similar for Maine); Doc. No. 191 at 15 ("Nearly half of Plaintiff States have already purchased mail ballot envelopes for the 2026 federal election cycle that will not be in compliance with the requirements the EO has directed USPS to adopt by rulemaking.").

from their meritless ripeness arguments.  *See, e.g.*, Doc. No. 105 ¶¶ 31, 32, 58, 59; Doc. No. 155 ¶¶ 31, 32, 58, 59; *see also* Doc. No. 191 at 30 (recognizing that the Confirmed Citizens Lists function "at minimum, as a threatened enforcement mechanism that will chill local election officials from complying with legal obligations to ensure that all eligible citizens may vote"); *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012) ("The public interest . . . favors permitting as many qualified voters to vote as possible"); *League of Women Voters v. Newby*, 838 F.3d 1, 14 (D.C. Cir. 2016) (recognizing "the strong public interest in ensuring that unlawful agency decisionmaking does not strip citizens of the right to vote").

For these reasons, Federal Defendants have not met their burden to receive the extraordinary relief of a stay pending appeal, and this Court should deny their motion.

8

Dated: July 2, 2026

Respectfully submitted.

**ROB BONTA**
Attorney General of California

By: */s/ Michael S. Cohen*
Michael S. Cohen*
    *Deputy Attorney General*
Thomas S. Patterson*
    *Senior Assistant Attorney General*
Seth E. Goldstein*
    *Supervising Deputy Attorney General*
Anne P. Bellows*
Kevin L. Quade*
Lisa C. Ehrlich*
Malcolm A. Brudigam*
Robert William Setrakian*
    *Deputy Attorneys General*
1300 I Street, P.O. Box 944255
Sacramento, CA 95814
(916) 210-6090
Michael.Cohen@doj.ca.gov
Seth.Goldstein@doj.ca.gov
Anne.Bellows@doj.ca.gov
Kevin.Quade@doj.ca.gov
Lisa.Ehrlich@doj.ca.gov
Malcolm.Brudigam@doj.ca.gov
William.Setrakian@doj.ca.gov

*Counsel for the State of California*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Vanessa A. Arslanian*
M. Patrick Moore, Jr. (BBO No. 670323)
    *First Assistant Attorney General*
Vanessa A. Arslanian (BBO No. 688099)
    *State Trial Counsel*
Jared B. Cohen (BBO No. 689217)
Jak Kundl (BBO No. 713951)
    *Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108
(617) 963-2107
Vanessa.Arslanian@mass.gov
Pat.Moore@mass.gov
Jared.B.Cohen@mass.gov
Jak.Kundl@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**AARON FORD**
Attorney General of Nevada

By: */s/ K. Brunetti Ireland*

K. Brunetti Ireland*
    *Chief of Special Litigation*
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-9246
KIreland@ag.nv.gov

*Counsel for the State of Nevada*

**NICHOLAS W. BROWN**
Attorney General of Washington

By: */s/ Tera M. Heintz*
Tera M. Heintz*
Cristina Sepe*
Karl D. Smith*
    *Deputy Solicitors General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
karl.smith@atg.wa.gov

*Counsel for the State of Washington*

*(additional counsel on following page)*

9

**KRISTIN K. MAYES**
Attorney General of the State of Arizona

By: */s/ Kara Karlson*
Kara Karlson*
Karen J. Hartman-Tellez*
Joshua M. Whitaker*
Syreeta Tyrell*
    *Assistant Attorneys General*
2005 North Central Ave.
Phoenix, AZ 85004
(602) 542-8118

*Counsel for the State of Arizona*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Maura Murphy*
Maura Murphy*
    *Deputy Associate Attorney General*
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5020

*Counsel for the State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General of the State of
Delaware

By: */s/ Ian R. Liston*
Ian R. Liston*
    *Director of Impact Litigation*
Vanessa L. Kassab*
    *Deputy Attorney General*
820 N. French Street
Wilmington, DE 19801
(302) 683-8899

*Counsel for the State of Delaware*

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
    *Solicitor General*
Peter Baumann*
    *Senior Assistant Attorney General*
1300 Broadway
Denver, Colorado 80203
(720) 508-6400

*Counsel for the State of Colorado*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Virginia A. Williamson*
Virginia A. Williamson*
    *Assistant Attorney General*
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6584

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti*
Erik Grill*
    *Assistant Attorneys General*
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659

*Counsel for the State of Michigan*

*(additional counsel on following page)*

10

**BRIAL L. SCHWALB**
Attorney General of the District of Columbia

By: */s/ Eliza H. Simon*
Eliza H. Simon*
    *Senior Counsel*
400 6th St. NW
Washington, D.C. 20001
(202) 741-5221

*Counsel for the District of Columbia*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Angela Behrens*
Angela Behrens*
Allen Cook Barr*
    *Assistant Attorney General*
Lindsey E. Middlecamp*
    *Special Counsel*
445 Minnesota Street, Suite 600
St. Paul, MN, 55101
(651) 300-0711

*Counsel for the State of Minnesota*

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Vikas Didwania*
Vikas Didwania*
    *Complex Litigation Counsel*
Alex Hemmer*
    *Deputy Solicitor General*
Holly F.B. Berlin*
    *Assistant Attorney General*
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526

*Counsel for the State of Illinois*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Meghan K. Musso*
Meghan K. Musso*
Jonathan Mangel*
Joshua P. Bohn*
    *Deputy Attorneys General*
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5276

*Counsel for the State of New Jersey*

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Katherine W. Thompson*
Katherine W. Thompson*
    *Special Counsel*
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800

*Counsel for the State of Maine*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Bailey Colfax*
Bailey Colfax*
    *Assistant Attorney General*
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060

*Counsel for the State of New Mexico*

*(additional counsel on following page)*

11

**LETITIA JAMES**
Attorney General of New York

By: */s/ Colleen K. Faherty*
Colleen K. Faherty*
   *Special Trial Counsel*
Rabia Muqaddam*
   *Chief Counsel, Federal Initiatives*
28 Liberty Street
New York, NY 10005
(212) 416-6046

*Counsel for the State of New York*


**JEFF JACKSON**
Attorney General of North Carolina

Laura Howard
Chief Deputy Attorney General

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
   *Associate Deputy Attorney General*
114 W. Edenton Street
Raleigh, NC 27603

*Counsel for the State of North Carolina*


**DAN RAYFIELD**
Attorney General, State of Oregon

By: */s/ Thomas H. Castelli*
Thomas H. Castelli*
   *Special Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880

*Counsel for the State of Oregon*


**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
   *Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153

*Counsel for the State of Vermont*


**JAY JONES**
Attorney General for the Commonwealth of Virginia

By: */s/ Tillman J. Breckenridge*
Tillman J. Breckenridge*
   *Solicitor General*
202 North Ninth Street
Richmond, VA 23219

*Counsel for the Commonwealth of Virginia*


**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Kyla Duffy*
Kyla Duffy*
   *Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400

*Counsel for the State of Rhode Island*


*(additional counsel on following page)*

**JOSHUA L. KAUL**
Attorney General for the State of
Wisconsin

By: */s/ Lynn Lodahl*
Lynn Lodahl*
   *Assistant Attorney General*
17 West Main Street
Madison, WI 53707-7857
(608) 264-6219

*Counsel for the State of Wisconsin*

**JOSH SHAPIRO**
Governor of the Commonwealth of Pennsylvania

By: */s/ Michael J. Fischer*
Michael J. Fischer*
Jacob B. Boyer*
   *Deputy General Counsel*
30 North Third Street, Suite 200
Harrisburg, PA 17101
(717) 831-2847

*Counsel for the Governor of the Commonwealth of
Pennsylvania*

*\*Admitted pro hac vice or pro hac vice applications forthcoming*

### CERTIFICATE OF SERVICE

I, Michael S. Cohen, hereby certify that I served a true copy of the above document upon all counsel of record via this Court's electronic filing system.

Dated:  July 2, 2026

*/s/ Michael S. Cohen*

Michael S. Cohen
Deputy Attorney General
*Counsel for the State of California*